Dorothy ELFENBEIN,
Plaintiff-Appellant,

v.

GULF & WESTERN INDUSTRIES, INC., and Stelux Manufacturing Co., Defendants-Appellees,

and

Bulova Watch Co., Inc., Defendant.

No. 197, Docket 78–7342.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1978.
Decided Dec. 21, 1978.

---

Mordecai Rosenfeld, New York City, for plaintiff-appellant.

La Porte & Meyers, New York City, for defendant Bulova Watch Co.

Willkie, Farr & Gallagher, New York City, for defendant-appellee Stelux Mfg. Co.

Aranow, Brodsky, Bohlinger, Benetar & Einhorn, New York City, for defendant-appellee Gulf & Western Industries, Inc.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and MISHLER, District Judge.*

PER CURIAM:

This is an appeal from a decision of the United States District Court for the Southern District of New York, Broderick, J., dismissing appellant's derivative action for failure to comply with Rule 23.1, Fed.R. Civ.P. On June 8, 1976 Dorothy Elfenbein, a shareholder of Bulova Watch Co., Inc. ("Bulova"), instituted a derivative action against Bulova, Gulf & Western Industries ("Gulf"), Stelux Manufacturing Co. ("Stelux"), and the directors of Bulova. The complaint alleged that prior to May, 1976 Gulf owned approximately 27% of the then outstanding common stock of Bulova. On May 28, 1976, Gulf sold its shares (amount-

ing to 1,006,100 shares) to Stelux at a price of $14 per share. The market price at the time was $7 per share. It was alleged that Gulf's sale constituted an improper transaction under § 16(b) of the Securities Exchange Act of 1934 and a breach of statutory and common-law duties which Gulf owed to Bulova's shareholders. Appellant also alleged that Stelux's purchase violated §§ 1 and 2 of the Sherman Act, § 1 of the Wilson Tariff Act and § 7 of the Clayton Act. By stipulation dated November 30, 1976 appellant agreed to discontinue the claim predicated on § 16(b) and to discontinue the claims against the individual defendants. Thereafter an amended complaint was filed.

In February of 1977, the defendants moved to dismiss the amended complaint on several grounds including plaintiff's failure to plead an adequate legal excuse for her failure to demand that Bulova's Board of Directors commence the action. The district court granted the motion on the sole ground that plaintiff had failed to comply with Rule 23.1. The complaint was "dismissed without prejudice to its renewal."

The sole issue presented for review on this appeal is whether the district court erred in granting the defendant's motion to dismiss because of the plaintiff's failure to comply with the demand requirements of Rule 23.1. However, before we turn our attention to this issue we face a crucial procedural question: Is the decision of Judge Broderick dismissing the complaint "without prejudice to its renewal" a final appealable order? 28 U.S.C. § 1291 grants the courts of appeals jurisdiction "from all final decisions of the district courts of the United States . . . ." The rationale behind this policy of finality was set forth fully by Mr. Justice Frankfurter in *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 460 (1940):

> Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby

* Of the Eastern District of New York, sitting by designation.

is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause.

 It appears to be well established that a district court's order dismissing a complaint but granting leave to amend the complaint is not final and therefore not appealable. *Kozemchak v. Ukrainian Orthodox Church of America*, 443 F.2d 401 (2d Cir. 1971); *Epton v. Hogan*, 355 F.2d 203 (2d Cir. 1966). If the district court merely dismisses the complaint, without further comment, then the view, at least in this circuit, is that the district court intended to terminate the action and that the dismissal order is final. *Weisman v. LeLandais*, 532 F.2d 308, 309 (2d Cir. 1976).[1]

In the instant case, the district court dismissed the complaint "without prejudice to its renewal." We must confess a certain degree of uncertainty as to what Judge Broderick intended by the use of this phrase.

In *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976) the court held a district court's dismissal "without prejudice" amounted to an implicit invitation to the plaintiff to amend the complaint. The court held that

> [g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action. Only if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable. *Azar v. Conley*, 480 F.2d 220 (6th Cir. 1973); *Grantham v. McGraw-Edison Co.*, 444 F.2d 210 (7th Cir. 1971); *Hurst v. California*, 451 F.2d 350 (9th Cir. 1971).

*Id.* at 951–52.[2]

Moore's Treatise rejects this view of a dismissal "without prejudice." "If . . . the motion [to dismiss] is sustained and the effect is to dismiss the action for want of jurisdiction, either of the person or subject matter, or because of improper venue, or for any other reason, although the dismissal is without prejudice, the judgment is final." 9 Moore's Federal Practice ¶ 110.08[1], at 113.

This circuit has clearly rejected the view that "without prejudice" means "with leave to amend." In *Allied Air Freight, Inc. v. Pan American World Airways*, 393 F.2d 441 (2d Cir.), *cert. denied*, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968) the district court dismissed a civil antitrust complaint "with-

---

1. The Ninth Circuit is of a different view. The Court of Appeals for the Ninth Circuit has adopted the view that

 [a]n order which dismisses a complaint without expressly dismissing the action is not, except under special circumstances, an appealable order. *Marshall v. Sawyer*, 9 Cir., 301 F.2d 639, 643. The special circumstances under which this court will regard such an order as final, and therefore appealable, must be such as to make it clear that the district court determined that the action could not be saved by any amendment of the complaint. *Marshall v. Sawyer*, supra, at 643.

 *Firchau v. Diamond National Corp.*, 345 F.2d 269, 270–271 (9th Cir. 1965).

 This view seems consistent with several decisions in the Ninth Circuit holding that a motion to dismiss is not a responsive pleading within the meaning of Rule 15(a), Fed.R.Civ.P. and that a complaint may be amended once as a matter of right even after a motion to dismiss has been granted. *222 East Chestnut Street Corp. v. Lakefront Realty Corp.*, 256 F.2d 513 (9th Cir.), *cert. denied*, 358 U.S. 907, 79 S.Ct. 232, 3 L.Ed.2d 228 (1958). However, while the law in this circuit is that a motion to dismiss is not a responsive pleading, and therefore the complaint may be amended without leave of the court, *Christophides v. Porco*, 289 F.Supp. 403 (S.D.N.Y.1968), it is equally well established that this right terminates upon the granting of the motion to dismiss. *Swan v. Board of Higher Education of the City of New York*, 319 F.2d 56 (2d Cir. 1963).

2. It is worth noting that the court explicitly suggested "that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time . . . ." *Borelli v. City of Reading, supra*, 532 F.2d at 951 n.1.

out prejudice." On appeal the court held that "dismissals with and without prejudice are equally appealable as final orders. *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794, 69 S.Ct. 824, 93 L.Ed. 1042 (1949); *Noonan v. Cunard Steamship Co.*, 375 F.2d 69 (2d Cir. 1967)." 393 F.2d at 444. The same conclusion was reached in *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 821 (2d Cir. 1967). The court held that "[a]lthough a dismissal without prejudice permits a new action (assuming the statute of limitations has not run) without regard to *res judicata* principles, the order of dismissal, nevertheless, is a final order from which an appeal lies." [3]

■ Our confusion results from Judge Broderick's expansion of the phrase "without prejudice." The district court's dismissal of the complaint "without prejudice to its renewal" could certainly be read as an order granting the plaintiff leave to amend her complaint. However, we find it impossible to determine to any real degree of certainty what the district court intended. Therefore, we choose to import no meaning to the phrase beyond the meaning repeatedly given by this court to the phrase "without prejudice." The action is terminated; however, a subsequent suit will not be barred by the doctrine of *res judicata*.

In making this decision we rely, in part, on Rule 41(b) Fed.R.Civ.P. It provides, *inter alia*:

For failure of the plaintiff to prosecute or to comply with *these rules* or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision *and any dismissal not provided for in this rule*, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an *adjudication upon the merits.* (emphasis added)

■ We assume that the district court did not intend for its decision to operate as a bar to a subsequent suit. Therefore, there was good reason, keeping in mind Rule 41(b), to specifically indicate that no adjudication upon the merits had occurred.

■ We are not unmindful of the fact that no judgment of the district court was ever set forth in a separate document. Indeed, the absence of such a document is a matter of genuine concern. Rule 54(a) Fed. R.Civ.P. defines a judgment as "a decree and any order from which an appeal lies." Rule 58 requires that "[e]very judgment shall be set forth on a separate document." It also states that "[a] judgment is effective only when so set forth and when entered as provided in Rule 79(a) [upon the docket sheet]." To be sure, it is now settled that the absence of a separate document entitled "judgment" does not foreclose appellate review. *Bankers Trust Co. v. Mallis*, 455 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). However, in our view the better practice is to set forth a final judgment in a separate document. We reiterate our language in *Turner v. Air Transport Lodge 1894*, 585 F.2d 1180, at 1182 (2d Cir. 1978):

We suggest that, where the District Court makes a decision intended to be "final" (28 U.S.C. § 1291), the better procedure is to set forth the decision in a separate document called a judgment (Fed.R.Civ.P. 58).

■ We also strongly suggest to the district courts that they use the terms "with prejudice" or "without prejudice" only when making a determination as to the *res judicata* effect of a dismissal. These terms are not substitutes for clear indications as to whether repleading will be allowed.

---

**3.** There has been a great deal of confusion surrounding the use of the term "prejudice" in this context. This confusion is amply illustrated by *Nussbacher v. Continental Illinois Bank and Trust Co. of Chicago*, 61 F.R.D. 399, 405 (N.D.Ill.1973), *rev'd and remanded*, 518 F.2d 873 (7th Cir. 1975). The district court granted the defendant's motion to dismiss the amended complaint for failure to comply with Rule 23.1 "with prejudice." It stated, however, that "[s]uch dismissal shall, of course, have no *res judicata* effect as far as the *merits* of the case are concerned. Rather, it affects only the issue of demand or excuse thereof under Rule 23.1."

Application of these principles would have eliminated the difficult question of interpretation that has confronted us in this case. Thus, if the district court had intended that the plaintiff be given an opportunity to amend her complaint, the order should have clearly granted leave to replead. Indeed, we note that on facts such as these, this would have been the preferable disposition. We see no point in imposing upon a plaintiff the burden of instituting a new action and subjecting her to the risk of being unable to once again obtain personal jurisdiction over a defendant. Of course, as noted above, an order which simply dismisses a complaint with leave to replead is neither final nor appealable. Such a disposition does an injustice to both parties. A plaintiff is entitled to have an appellate court review the sufficiency of the dismissed pleading; a defendant has a legitimate interest in knowing that a dismissed action will not be renewed sometime in the distant future by the filing of an amended complaint. Therefore, the ideal disposition in cases such as these is to grant leave to replead within a specified time period, with a direction to the clerk to enter judgment if no amended complaint is forthcoming. Such an order would safeguard the interest of all the litigants and provide the appellate court a clear basis for determining its finality.

Having concluded that the order of the district court is final and appealable we now turn to the question whether it was proper to dismiss the complaint for failure to meet the demand requirement of Rule 23.1. That rule provides, in pertinent part, that in a derivative action, "[t]he complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

In *Brody v. Chemical Bank*, 517 F.2d 932, 934 (2d Cir. 1975) this court discussed the rationale behind the demand requirement. We held that

[t]he very purpose of the "demand" rule is to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs. (citation omitted).

We have also held, however, that "a demand need not be made on the directors or shareholders where such a demand would be 'futile,' 'useless,' or 'unavailing,' . . . And where the directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made." *Cathedral Estates v. Taft Realty Corp.*, 228 F.2d 85, 88 (2d Cir. 1955) (citations omitted). While this standard for determining when demand may be excused is easily articulated, its proper application on any given set of facts has proved elusive. "[P]robably the most straightforward approach is to admit frankly that it lies within the sound discretion of the court to determine the necessity for demand." *Papilsky v. Berndt*, 59 F.R.D. 95, 96–97 (S.D.N.Y.1973) *citing* 3B Moore's Federal Practice ¶ 23.1.19.

In the instant case, plaintiff stated in paragraph twelve of her amended complaint that a demand on the board of Bulova to bring the lawsuit would be futile because

(a) The alleged wrongdoers, Gulf and Stelux, have controlled and dominated Bulova and its board of directors at all relevant times through their ownership of 27% of Bulova's outstanding shares. Reflecting that control, C. P. Wong, who is managing director of Stelux, became Bulova's chief executive officer and chairman of its Executive Committee upon the purchase of Stelux of its interest in Bulova.

(b) A majority of Bulova's directors are (and have been at all relevant times) Bulova's employees or consultants who could not act against the interest of those who control Bulova.

(c) The wrongs alleged herein are a violation of law and cannot be ratified or approved by Bulova's directors.

The district court held that these allegations did not amount to a showing that demand on Bulova's board would necessarily be futile. We cannot say that the district court abused its discretion in making that finding.

Plaintiff's reference to the amount of Bulova stock that Stelux owned provides little support to her claims of "futility." It is true that, as a practical matter, ownership of 27% of a corporation's stock may, in many circumstances, be equated with control over the corporation. However, we believe that ownership of this amount of stock does not, as a matter of law, amount to control for purposes of determining futility. This is especially true where the stock owner has only two nominees on the corporation's eleven-member board of directors. Certainly, where the question presented is whether the directors of a corporation will take action that they have a fiduciary duty to take, we cannot say that they will necessarily breach that duty. This determination, moreover, is reinforced by the fact that, in the instant case, there is no evidence that Bulova's directors were in any way involved in the challenged sale.

In view of the foregoing it seems clear that the district court acted properly when it concluded that "[i]t is by no means inevitable that the directors of Bulova will decline to bring a suit against Gulf and Stelux."

The judgment is affirmed.