701 F.2d 245
 Fed. Sec. L. Rep. P 99,106
Harry LEWIS, Plaintiff-Appellant,
v.
Charles L. GRAVES, James E. Cunningham, John A. Morgan, W.E.
Earles, Charles L. Davis, James A. Hunt, John D. Ritchie,
Robert K. Richie, Hosea W. Bailey, G.W. Douglas Carver,
Graham D. Mattison, Morgan Stanley & Co., Incorporated,
Smith Barney, Harris Upham & Co., The Babcock & Wilcox
Company, and J. Ray McDermott & Co., Inc., Defendants-Appellees.
 No. 280, Docket 82-7398.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 10, 1983.
Decided Feb. 28, 1983.
 
 Stanley Nemser, New York City (Nemser & Nemser, New York City, of counsel), for plaintiff-appellant.
 Richard E. Nolan, New York City (Joel B. Gardner, Davis, Polk & Wardwell, New York City, of counsel), for defendant-appellee J. Ray McDermott & Co., Inc. and the individual defendants-appellees.
 Cravath, Swaine & Moore, New York City, of counsel, for defendant-appellee Morgan Stanley & Co., Inc.
 Sullivan & Cromwell, New York City, of counsel, for defendant-appellee The Babcock & Wilcox Co.
 White & Case, New York City, of counsel, for defendant-appellee Smith Barney, Harris Upham & Co., Inc.
 Before FEINBERG, Chief Judge, CARDAMONE and DAVIS*, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 We review on this appeal the single issue of whether the district court erred in dismissing plaintiff's shareholder derivative suit for failure to make a demand upon the directors of defendant J. Ray McDermott & Co., Inc. (McDermott). A derivative suit often brings into the litigation arena parties holding widely divergent views as to how the affairs of a corporation can best be conducted. Directors of a corporation ordinarily believe that they have been good stewards of the corporate assets. They also believe that, by virtue of their offices, they are in a better position to decide whether it is in a corporation's best interests to pursue remedies for alleged wrongs committed against it. A derivative plaintiff, on the contrary, usually has little or no confidence that the corporation's directors will pursue remedies designed to correct alleged wrongdoing. Like darkened ships passing in the night, neither has a fair view of the other. Beginning from such irreconcilable positions, it is no wonder that the demand requirement is insisted upon by corporate directors and just as strongly resisted by derivative plaintiffs.
 
 BACKGROUND
 
 2
 On March 28, 1978 plaintiff Harry Lewis commenced the instant shareholder derivative action on behalf of McDermott alleging violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78j(b), 78n(a) (1976), Rules 10b-5 and 14a-9 promulgated thereunder, 17 C.F.R. Secs. 240.10b-5, 240.14a-9 (1982), and common law. Filed in the United States District Court for the Southern District of New York the complaint named as defendants McDermott; each of McDermott's directors then in office; The Babcock and Wilcox Company (Babcock), acquired in 1978 by McDermott; Smith Barney, Harris Upham & Co., McDermott's investment advisor in connection with the Babcock acquisition; and Morgan Stanley & Co., Inc., Babcock's investment advisor. The complaint challenged the propriety of two seemingly separate series of transactions: McDermott's highly publicized acquisition of and subsequent merger with Babcock in 1978, and the issuance of McDermott stock to various McDermott officers and directors pursuant to the firm's 1968 and 1974 Career Executive Stock Plans (Stock Plans).
 
 
 3
 Plaintiff made no demand on McDermott's board of directors to institute a suit or take over his derivative action. Rather, plaintiff alleged in his complaint that such a demand was excused because:all of the individual defendants were the directors of McDermott at the time of the acts complained of and they have knowingly participated, assisted, aided and abetted in the wrongful acts, transactions and delinquencies herein complained of and they have benefited thereby and they have failed to take action thereon despite the fact that they have known about these acts. No action could or would be permitted to be instituted by McDermott without the consent of its directors and any demand upon them to institute such an action against themselves would have been futile.
 
 
 4
 In 1981 defendants moved for judgment on the pleadings pursuant to Rules 12(c) and 23.1 of the Federal Rules of Civil Procedure on the ground that plaintiff had failed to make a demand on the board as required by Rule 23.1. In an order dated February 4, 1982 District Court Judge John M. Cannella held that plaintiff's allegations of futility were insufficient to excuse the failure to make a demand and granted defendants' motion for judgment on the pleadings. The district court gave plaintiff leave to replead if an appropriate demand made on McDermott's board within 30 days was subsequently refused. On April 1, 1982 plaintiff advised the court that it had not and would not make such a demand. The judgment was then entered from which plaintiff Lewis appeals.
 
 DISCUSSION
 
 5
 * Rule 23.1 requires, in pertinent part, that in a derivative action "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort" (emphasis added).
 
 
 6
 Requirements for demand upon directors by a plaintiff who pursues the extraordinary remedy of a derivative suit have been recognized for over a century in this country, see Hawes v. Oakland, 104 U.S. 450, 460-61, 26 L.Ed. 827 (1882), and for even longer in England. Note, Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit, 73 Harv.L.Rev. 746, 746 (1960). This long-standing requirement in federal practice is presently codified in Rule 23.1. See Note, The Demand and Standing Requirements in Stockholder Derivative Actions, 44 U.Chi.L.Rev. 168, 171 n. 23 (1976) (The Demand and Standing Requirements ). Decisional law written prior to the Rule's enactment is therefore applicable. C. Wright, Federal Courts Sec. 73, at 318 (2d ed. 1970). Thus, the Supreme Court's statement in Hawes that a derivative plaintiff must "show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, ... and this [effort] must be made apparent to the court," 104 U.S. at 460-61, is still a useful guide.
 
 
 7
 With this background in mind we focus on the primary purposes of the demand rule. The rule is intended " 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.' " Elfenbein v. Gulf & Western Industries, Inc., 590 F.2d 445, 450 (2d Cir.1978) (quoting Brody v. Chemical Bank, 517 F.2d 932, 934 (2d Cir.1975)); see The Demand and Standing Requirements, supra, at 171 (by forcing shareholders to exhaust intracorporate remedies by first making demand, the demand requirement furthers a principle basic to corporate organization, that the management of the corporation be entrusted to its board of directors). Permitting corporations to assume control over shareholder derivative suits also has numerous practical advantages. Corporate management may be in a better position to pursue alternative remedies, resolving grievances without burdensome and expensive litigation. See Cramer v. General Telephone & Electronics Corp., 582 F.2d 259, 275 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). Deference to directors' judgments may also result in the termination of meritless actions brought solely for their settlement or harassment value. See id. Moreover, where litigation is appropriate, the derivative corporation will often be in a better position to bring or assume the suit because of superior financial resources and knowledge of the challenged transactions.
 
 
 8
 Despite the strong policy and practical advantages favoring exhaustion of intracorporate remedies, the demand requirement of Rule 23.1 is not without exception. Under the law of this circuit, demand need not be made where "futile." See Abramowitz v. Posner, 672 F.2d 1025, 1033 (2d Cir.1982); Elfenbein, 590 F.2d at 450; Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir.1955). The reasons advanced for a claim of futility must be pled with particularity in the complaint itself. See Elfenbein, 590 F.2d at 450 (quoting Fed.R.Civ.P. 23.1); Cramer, 582 F.2d at 275; 3B J. Moore & J. Kennedy, Moore's Federal Practice p 23.1.19 (2d ed. 1982). As correctly recognized by the district court, the decision as to whether a plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies within the discretion of the district court. See Abramowitz, 672 F.2d at 1033; Elfenbein, 590 F.2d at 450. Thus, the district court's holding--that plaintiff's allegations of futility were insufficient--cannot be reversed unless it constituted an abuse of discretion. We find none.
 
 
 9
 Demand is presumptively futile where the directors are antagonistic, adversely interested, or involved in the transactions attacked. See Abramowitz, 672 F.2d at 1033. Pointing to the fact that all of the McDermott directors at the time of the complaint had previously approved the Babcock acquisition and the Stock Plans distributions, plaintiff argues that their acquiescence in the dealings complained of was sufficient "involvement" to excuse demand. We agree with the district court, however, that absent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile.
 
 
 10
 While we have not had occasion to rule on the issue of whether mere approval or acquiescence establishes futility, there is more than ample authority from other circuits that it does not. See Grossman v. Johnson, 674 F.2d 115, 124 (1st Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); Lewis v. Curtis, 671 F.2d 779, 785 (3d Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1210 (9th Cir.1980); In re Kauffman Mutual Fund Actions, 479 F.2d 257, 265 (1st Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). But see Liboff v. Wolfson, 437 F.2d 121, 122 (5th Cir.1971) (per curiam). The fact that a corporation's directors have previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligations to the corporation, will refuse to take up the suit. This is particularly true where the directors' prior acquiescence was obtained through fraud or where the dealings in question otherwise went sour for the corporation. Moreover, Rule 23.1 would be substantially diluted if prior board approval standing alone established futility. Derivative suits are almost invariably directed at major, allegedly illegal, corporate transactions. By virtue of their offices, directors ordinarily participate in the decision making involved in such transactions. See The Demand and Standing Requirements, supra, at 179. Excusing demand on the mere basis of prior board acquiescence, therefore, would obviate the need for demand in practically every case.
 
 
 11
 We do not consider ourselves bound by dicta in our decision in Abramowitz, 672 F.2d at 1033, which appellant would have us rely on for the proposition that demand is automatically excused if all directors are named as defendants.[1] The single fact that the plaintiff named as defendants more than a majority--in this case all--of McDermott's then serving directors in our view falls short of excusing demand. See Lewis, 671 F.2d at 785; Heit v. Baird, 567 F.2d 1157, 1162 (1st Cir.1977); Brooks v. American Export Industries, Inc., 68 F.R.D. 506, 511 (S.D.N.Y.1975); cf. Galef v. Alexander, 615 F.2d 51, 59-60 (2d Cir.1980) (discussing with apparent approval rationale of cases holding that demand must be made even where all directors have been named as defendants). To construe it as sufficient would mean that plaintiffs could readily circumvent the demand requirement merely by naming as defendants all members of the derivative corporation's board. Permitting plaintiffs to employ this tactic would eviscerate Rule 23.1, a rule that this Court has vigorously enforced, see, e.g., Elfenbein, 590 F.2d at 451; Brody v. Chemical Bank, 517 F.2d 932, 934 (2d Cir.1975) (per curiam); Brody v. Chemical Bank, 482 F.2d 1111, 1114 (2d Cir.) (per curiam), cert. denied, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). Plaintiff unpersuasively argues that--like magic--naming all of McDermott's directors as defendants caused the demand requirement to vanish. This transparent litigation tactic is like sleight of hand that is slower than the eye.
 
 B
 
 12
 Given that particularized allegations of bias or self-interest on the part of the defendant directors are necessary to establish a degree of "involvement" sufficient to excuse demand, we turn to the allegations of plaintiff's complaint, which he contends adequately charge bias and self-interest. With respect to the Stock Plans distributions, five of the eleven McDermott directors serving at the time of the complaint are alleged to have received impermissible grants of stock under the Plans. Accepting plaintiff's averments, as we must, these five directors benefited personally from the distributions and therefore were "involved" in the transaction now challenged. A majority of the eleven-member board, however, was not alleged to have received anything in the Stock Plans transactions. While plaintiff did claim that these six directors participated in and/or aided and abetted the alleged wrongful distributions by failing to take corrective action, these conclusory allegations are devoid of any particularized charges of bias or self-interest.[2] Just as it does not suffice simply to name all of the directors as defendants and charge them with having approved the alleged wrongdoings, bald charges of mere failure to take corrective action are similarly inadequate to demonstrate futility. Since plaintiff failed to make any particularized allegations of bias or self-interest on the part of a majority of McDermott's board, the district court was clearly within its discretion in holding that demand was not futile with respect to the Stock Plans claims.
 
 
 13
 Regarding the Babcock stock acquisition and merger, plaintiff asserts that the McDermott directors approved the transaction in order to secure their own positions at McDermott. Plaintiff argues that these positions were allegedly threatened by certain prior corporate misconduct.[3] While improper maintenance of a corporate directorship may in some cases provide the foundation for a claim of bias or self-interest sufficient to excuse demand, the allegations of plaintiff's complaint do not indicate in what way McDermott's acquisition of Babcock ensured the positions of the defendant directors. In fact, plaintiff points to nothing from which we can even speculate that the Babcock acquisition might have been approved by the McDermott board in order to entrench the directors' positions on that board. If a derivative plaintiff could show self-interest in a transaction by mere conclusory allegations that the defendant directors approved a business acquisition simply to secure their own positions, without providing any logical or factual nexus between the transaction and the asserted entrenchment, the demand requirement of Rule 23.1 would again become virtually meaningless. It was not an abuse of discretion for the trial court to hold that plaintiff failed to plead, with the requisite particularly, the directors' interest or bias regarding the Babcock acquisition.
 
 C
 
 14
 Plaintiff's remaining contentions merit only cursory discussion. His assertion that the district court improperly dismissed his complaint solely upon its analysis of the complaints in two similar actions which the court had dismissed earlier, Stein v. Aldrich (Stein I)[4] and Stein v. Bailey (Stein II),[5] is unpersuasive. The memorandum and order below demonstrates that the court analyzed plaintiff's complaint separately from the complaints in Stein I and Stein II. Similarly unpersuasive is plaintiff's argument that events occurring after the filing of his complaint, specifically McDermott's answer and motion to dismiss and a decision by McDermott's Independent Committee on Litigation to terminate the Stein II litigation, excused the need for demand. We agree with the district court that these events do not necessarily lead to the conclusion that demand would have been futile here. Moreover, since " '[t]he futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight[,]' " Grossman, 674 F.2d at 123 (quoting Cramer, 582 F.2d at 276), these post-complaint events are not relevant.
 
 
 15
 Finally, plaintiff argues that by requiring demand in a futile situation, we are undercutting the distinction recently enunciated in Delaware law between demand-excused and demand-required cases. See Zapata Corp. v. Maldonado, 430 A.2d 779 (Del.1981). Plaintiff cannot rely on Zapata to excuse his failure to make demand since that case was decided well after he filed suit in March 1978. Moreover, that distinction governs the standard of judicial review applicable to independent director committee recommendations to terminate derivative litigation, see Abramowitz, 672 F.2d at 1031 (under Delaware law, where demand is required, court will defer to company's business judgment to forego litigation unless directors acted wrongfully; where demand is futile, however, company's business judgment is also subject to court's objective scrutiny). Since demand was not futile in this case, the distinction made under Delaware law is not implicated.
 
 
 16
 Affirmed.
 
 
 
 *
 United States Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 Nor does our recent decision in Joy v. North, 692 F.2d 880 (2d Cir.1982), petition for cert. filed, 51 U.S.L.W. 3567 (U.S. Jan. 24, 1983) (No. 82-1244) here require a contrary conclusion. In Joy v. North this Court stated, without further discussion, that "[w]hen there is a conflict of interest in the directors' decision not to sue because the directors themselves have profited from the transaction underlying the litigation or are named defendants, no demand need be made and shareholders can proceed directly with a derivative suit." 692 F.2d at 887-88. Notably, however, this statement was made, not in the course of interpreting federal law, but rather in predicting whether Connecticut would classify a given action as demand-required or demand-excused. The present case involves the requirements of Rule 23.1 of the Federal Rules of Civil Procedure, not Connecticut law
 
 
 [2]
 Plaintiff's further argument--that the six directors' failure to seek cancellation or recission of the Stock Plans distributions was part of a scheme to entrench their positions--is simply conclusory and too implausible to meet Rule 23.1's requirement of particularity
 
 
 [3]
 Throughout its complaint and brief, plaintiff makes much of certain known misconduct engaged in by McDermott and several of its officers prior to the Babcock acquisition, including various criminal violations. As egregious as this background behavior may have been, it is not dispositive here because plaintiff has failed to allege with any degree of sufficient particularity a logical nexus between this prior conduct of some officials and the action taken by the entire board in the instances challenged here
 
 
 [4]
 [1981-82 Transfer Binder] Fed.Sec.L.Rep. (CCH p 98,473) (S.D.N.Y.1980)
 
 
 [5]
 531 F.Supp. 684 (S.D.N.Y.1982)