731 F.2d 1014
 Fed. Sec. L. Rep. P 91,410
Charles G. KASTER, Warren A. Frank, Francis W. Murray,
Richard O. Hillery and John A. Makarczyk, Individually and
as Shareholders of Modification Systems, Inc. Suing on
behalf of themselves and all other shareholders of
Modification Systems, Inc., similarly situated and in the
right of Modification Systems, Inc., Plaintiffs-Appellants,
v.
MODIFICATION SYSTEMS, INC., Francis W. Meyers, Batiste
DeLuca, E.L. Thomas and Frank L. Kelly,
Defendants-Appellees.
 No. 231, Docket 83-7426.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1983.
Decided March 27, 1984.
 
 Jeffrey L. Liddle, New York City (Richard B. Schaeffer, David D. Howe, Liddle & Henze, New York City, of counsel), for plaintiffs-appellants.
 John Patrick Deveney, New York City (Charles Chehebar, Kellner, Chehebar, Deveney & Grizzle, New York City, of counsel), for defendants-appellees Meyers, DeLuca, Thomas and Kelly.
 Charles D. Bock, New York City (Linda Meisler, Carro, Spanbock, Fass, Geller, Kaster & Cuiffo, New York City, of counsel), for defendant-appellee Modification Systems, Inc.
 Before FRIENDLY, VAN GRAAFEILAND and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from the dismissal of a shareholders' derivative suit by the United States District Court for the Southern District of New York, Lowe, J., pursuant to Fed.R.Civ.P. 12(b)(6). The suit was dismissed for failure to state a claim upon which relief could be granted because the complaint failed to allege with particularity that a demand had been made on the directors, or adequate facts to excuse a demand as required by Fed.R.Civ.P. 23.1.
 
 
 2
 We agree with the district court's holding that the complaint did not meet the Rule 23.1 requirement. The court erred, however, in not considering and acting on appellants' cross-motion for leave to amend their complaint. We therefore vacate the judgment and remand for further proceedings not inconsistent with this opinion.
 
 BACKGROUND
 
 3
 Modification Systems, Inc. (MSI) is a closely held corporation which manufactures and modifies computer simulators for nuclear power plants. MSI was authorized to issue 11,490 Class A voting common shares and 8,510 Class B non-voting common shares, of which 8,450 voting shares and 7,840 non-voting shares had been issued and were outstanding in April 1980. Appellee Meyers was President, Chairman of the Board of Directors and controlling shareholder owning 71 percent of the voting shares. Appellee DeLuca was corporate counsel as well as a director. All of the directors except Kenedy had been chosen by Meyers.[1] On February 3, 1982 appellants who owned 79 percent of the non-voting shares and 17.6 percent of the voting shares filed suit on behalf of and against the corporation and individual officers and directors of the corporation.
 
 
 4
 In their complaint, appellants alleged that appellees violated Rule 10b-5 by voting to accept defendant Meyers' subscription for over two thousand shares of MSI voting stock at a price substantially below book value and thus defrauded the corporation. The complaint also alleged that Meyers violated Rule 10b-5 by failing to disclose to the other directors that his primary objective in acquiring the shares was to dilute the interests of the appellants. Finally, appellants alleged that Meyers breached his fiduciary duty to the corporation by accepting unreasonable compensation, acquiring a luxury condominium with corporate funds, charging expenses that were not incurred and issuing corporate checks for non-corporate purposes, and that the other directors breached their fiduciary duties by approving the unreasonable compensation and the condominium purchase.
 
 
 5
 On March 2, 1982, before any responsive pleadings were served, appellants filed a verified amended complaint pursuant to Fed.R.Civ.P. 15(a) which stated generally that:
 
 
 6
 [T]he plaintiffs have not made demands upon M.S.I., its officers or Directors with respect to commencing this action for the reason that the defendant Meyers possesses the voting control, and has utilized such control to name four of the five Directors, of the Corporation and further, has repeatedly used his control over the Board of Directors to dominate and oppress minority shareholders; thus, it would be futile and unavailing to demand that the Directors cause an action to be brought by M.S.I. against themselves.
 
 
 7
 Complaint p 20, J.App. at 22. Appellants also claimed that Meyers had refused demands to act on appellants' complaints. Complaint p 18, id. at 21-22. The complaint further alleged that the director representing minority shareholder interests had been systematically excluded from participating in the management of the corporation in that the other directors failed to provide him with notice of meetings and financial and other information. Complaint p 19, id. at 22. Appellants, however, did not include any specific examples or details of the above alleged incidents.
 
 
 8
 Individual appellees moved to dismiss appellants' amended complaint on March 15, 1982, pursuant to Rule 12(b)(6) for failure to meet the demand requirement of Rule 23.1. In the alternative, they sought a change of venue to the District of Maryland. Appellee corporation joined in the individual appellees' motions.
 
 
 9
 Appellants responded with a cross-motion for leave to amend their complaint should the court grant appellees' motion to dismiss. Appellants contended in their papers supporting the motion that the complaint met the requirements of Rule 23.1 by stating that they had made numerous "oral demands" on the corporation and on Meyers. Alternatively, they argued that their complaint advanced grounds on which a demand should be excused as futile.
 
 
 10
 The district court granted appellees' motion to dismiss appellants' complaint finding that appellants had conceded that they had made no demand on the directors and then held that: "Plaintiffs' amended complaint fails to allege with particularity any adequate or sufficient reasons for failing to make due demand on the defendant directors to obtain the relief requested." Explaining its decision, the court said: "However, the mere recitation that the demand would be 'futile' is not enough. Plaintiff must allege specific facts which would lead the Court to determine that the demand would indeed be futile." Stein v. Aldrich, [1981-1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 98,473, at 92,780 (S.D.N.Y. July 18, 1980). Then, relying on Lewis v. Graves, 701 F.2d 245, 248 (2d Cir.1983), the court held that mere allegations that directors had acquiesced in the wrongdoing was insufficient "involvement" to excuse demand. The court continued that allegations that Meyers, as majority shareholder, controlled the directors because he controlled their positions on the board was insufficient to demonstrate that the directors were adversely interested. The court also rejected as insufficient allegations that the directors were adversely interested because of their friendship with Meyers. In its dismissal of the action, the court discussed appellees' alternative motion for a change of venue and commented that a transfer would be proper pursuant to 28 U.S.C. Sec. 1404(a) (1976) for the convenience of the parties and the witnesses if the action was not dismissed. The district court, however, did not mention appellants' cross-motion for leave to amend the complaint in the event of dismissal.
 
 DISCUSSION
 
 11
 Fed.R.Civ.P. 23.1 requires that in a derivative action the complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." Demand on the directors is intended "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." Brody v. Chemical Bank, 517 F.2d 932, 934 (2d Cir.1975) (per curiam). Such a demand is excused if the demand would be "futile," "useless" or "unavailing;" if the directors are "antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made." Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir.1955) (citations omitted).
 
 
 12
 Appellants deny conceding that no demand had been made on the directors and they maintain that their complaint did allege facts sufficient to demonstrate the futility of making a demand on the directors. They point to the complaint's allegation that "numerous oral demands" had been made on Meyers and the corporation. J.App. at 21. This, however, is the only allegation regarding demands to rectify the wrongs alleged in the complaint. For our purposes it is unimportant whether appellants conceded that they had not satisfied the demand requirements of Rule 23.1. Appellants have not pleaded "with particularity" their efforts to obtain action from the directors; the amended complaint does not supply any information on the timing, circumstances, or manner of the alleged demands or on the response of the directors. A demand on Meyers does not constitute a demand on a "comparable authority" under Fed.R.Civ.P. 23.1 because Meyers is not invested with the full powers of the board of directors. See Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1209 (9th Cir.1980).
 
 
 13
 Appellants argue in the alternative that they have satisfied the requirements of Rule 23.1 by pleading sufficient facts to excuse a demand and that the district court abused its discretion by not finding that a demand on the directors would have been futile. Appellants do not challenge the district court's determination that allegations that the directors acquiesced in and benefited from the alleged wrongdoing are insufficient to excuse a demand. See Lewis v. Graves, 701 F.2d 245, 248-50 (2d Cir.1983). They argue instead that the district court abused its discretion by not considering their claim that demand on the directors would be futile because alleged wrongdoer Meyers owns 71 percent of the MSI voting shares and thus controls the board of directors.
 
 
 14
 We have repeatedly held that determination of the sufficiency of allegations of futility depends on the circumstances of the individual case and is within the discretion of the district court. See, e.g., Lewis v. Graves, 701 F.2d at 248; Elfenbein v. Gulf & Western Industries, Inc., 590 F.2d 445, 450 (2d Cir.1978) (per curiam). Consequently, our standard of review is abuse of discretion. Lewis v. Graves, 701 F.2d at 248. Given the lack of detail and the general nature of appellants' allegations, it is clear that the district court did not abuse its discretion in its determination on the sufficiency of the allegations of futility. See Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1209 (9th Cir.1980) (allegations of control rejected as conclusionary); Vernars v. Young, 539 F.2d 966, 968 (3d Cir.1976) (claim that majority shareholder controlled key director does not fulfill requirement of pleading with sufficient particularity); In re Kauffman Mutual Fund Actions, 479 F.2d 257, 264 (1st Cir.) (conclusionary pleading that directors dominated by wrongdoers insufficient), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Therefore the court's dismissal of the complaint for failure to satisfy the conditions of Rule 23.1 would have been proper in the absence of the cross-motion for leave to amend.
 
 
 15
 There is no indication in the court's opinion that it considered appellants' motion for leave to further amend their complaint in the event of a dismissal. Appellees suggest that, because the court had the proposed further amendments and appellants' supporting documents before it, the district court by implication considered them and found that they failed to rectify the deficiencies in the pleadings. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend need not be granted if the amendments serve no purpose). We cannot on this record accept appellees' suggestion. Because the dismissal of appellants' complaint may sound the death knell for their claims,[2] an explicit determination of appellants' cross-motion is necessary.
 
 
 16
 Whether leave to amend the complaint should be granted is within the sound discretion of the district court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). However, because of Rule 15(a)'s stricture that "leave shall be freely given when justice so requires," refusal to allow an amendment must be based on a valid ground. Foman v. Davis, 371 U.S. at 182, 83 S.Ct. at 230. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. at 330-31, 91 S.Ct. at 802 (undue prejudice to non-moving party); Denny v. Barber, 576 F.2d 465, 471 (2d Cir.1978) (sufficient opportunity to plead previously); Goss v. Revlon, Inc., 548 F.2d 405, 407 (2d Cir.1976) (per curiam) (undue delay); Vine v. Beneficial Finance Co., 374 F.2d 627, 637 (2d Cir.1967) (bad faith on the part of the moving party). That the amendments would not serve any purpose is a valid ground to deny a motion for leave to amend. Foman v. Davis, 371 U.S. at 182, 83 S.Ct. at 230; S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Development Fund Co., 608 F.2d 28, 42 (2d Cir.1979). As long as appellants have "at least colorable grounds for relief, justice does ... require" leave to amend. S.S. Silberblatt, Inc., 608 F.2d at 42. Because the district court found the original verified amended complaint deficient, it must carefully evaluate the proposed further amended complaint as a whole to determine if it alleges sufficient facts to meet the requirements of Rule 23.1. In re Penn Central Securities Litigation, 367 F.Supp. 1158, 1164 n. 2 (E.D.Pa.1973).
 
 
 17
 When the district court considers the sufficiency of the proposed amended complaint, or any further amendments that it may permit for the purposes of satisfying Rule 23.1, it will have to reconsider appellants' claim that ownership of a majority of shares by the alleged wrongdoer makes demand on the directors futile. We have yet to join those courts that have held that control of the directors by the alleged wrongdoer is grounds to excuse a demand. See Clark Enterprises, Inc. v. Holywell Corp., 559 F.Supp. 1307, 1309-12 (E.D.Va.1983) ("Demand is likewise excused where the board of directors is subject to the control of the alleged wrongdoers."); Abbe v. Goss, 411 F.Supp. 923, 924-25 (S.D.N.Y.1975) (demand excused where facts alleged showed that individual defendants "dominated and controlled" Board of Directors); In re Penn Central Securities Litigation, 367 F.Supp. at 1164 (requirements of Rule 23.1 met if "facts are alleged which lend support to the protestation of domination and control"). Our opinion in Elfenbein v. Gulf & Western Industries, Inc., 590 F.2d 445 (2d Cir.1978) (per curiam), indicated that control of the directors by the alleged wrongdoer can make a demand on the directors futile. In Elfenbein, however, we declined to find that ownership of 27 percent of a corporation's stock constituted control of the directors as a matter of law, particularly when only two of the eleven members of the board of directors were nominees of the alleged wrongdoer. Id. at 451. In the instant case, defendant Meyers owns 71 percent of the corporation's voting shares and has nominated all but one of the directors.
 
 
 18
 However, pleading such ownership will not by itself satisfy the futility exception in Rule 23.1. The complaint must further indicate that the majority shareholder controls the votes of the board.[3] See Lewis v. Curtis, 671 F.2d 779, 785 (3d Cir.) ("Control of the board by interested members, or participation by board members in a challenged transaction, may not be, in some circumstances, sufficient alone to make demand futile. A demand on the board should not be required, however, where the allegations of the complaint permit the inference by the court that the directors upon whom demand would be made lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued."), cert. denied, --- U.S. ----, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); Vernars v. Young, 539 F.2d 966, 968 (3d Cir.1976) ("Certainly, there is no presumption that a director is controlled. Rather, the issue is an intensely factual one.").
 
 
 19
 Appellants argue that a demand on the directors would be futile if the alleged wrongdoer controls the board because the directors will vote consistently with the interests of the wrongdoer even if those interests are directly contrary to the corporation's interests. According to appellants, ownership of a majority of the voting shares of a corporation allows the majority shareholder to choose the members of the board of directors who in turn will protect the interests of that shareholder to secure their board positions. Such an argument does not always reflect the realities of corporate life once the directors are seated. A director may have superior interests that would result in a vote contrary to the interests of the majority shareholder. A director usually owns some stock of the corporation and may vote to protect that interest if a contrary vote would result in a looting of the corporate treasury. A director may be motivated to protect the interests of the corporation because of the risk of personal liability for breach of fiduciary duty or for a securities laws violation. In less cynical times, the subjective sense of duty to the corporation that accompanies the acceptance of a directorship would be viewed as a strong incentive to vote to protect the corporation against any excesses. We are thus unwilling to say that ownership of a majority of shares by the alleged wrongdoer automatically makes a demand on the directors futile.[4]
 
 
 20
 Determining whether the complaint pleads sufficient facts to establish that the alleged wrongdoer controls the votes of the directors and consequently that a demand on the directors would be futile is within the sound discretion of the district court, see Elfenbein v. Gulf & Western Industries, Inc., 590 F.2d at 450-51, and depends on the unique pleadings of each case under consideration. See Lewis v. Graves, 701 F.2d at 248. Facts that could be pleaded to indicate that the allegedly wrongdoing majority shareholder controls the votes of the directors include the extent of the directors' involvement in the wrongdoing, the history of the board's votes concerning the majority shareholder's interests, the reaction of the majority shareholder to those who oppose him, directors' statements concerning their loyalties and the directors' other connections to the majority shareholder, e.g., family relationships, officer positions and financial ties. These are among the factors to be considered on remand by the district court in determining the sufficiency of the proposed amended complaint(s).
 
 
 21
 Appellants also urge us to hold that they should have leave to replead to remedy any defects not cured by the proposed amended complaint. Such a request is premature. Appellants may make the appropriate motions for further leave to amend on remand.
 
 
 22
 Judgment vacated and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 23
 FRIENDLY, Circuit Judge, concurring and dissenting:
 
 
 24
 I am in full agreement with so much of Judge Meskill's opinion as reverses the judgment dismissing the complaint for failure to comply with the pleading requirements of F.R.Civ.P. 23.1. However, I would go beyond this and hold that, since the further amended complaint was before the court of virtue of defendants' consent, see infra, the requirements of Rule 23.1 were met and that the complaint should be reinstated. This will avoid the need for the further determinations by the district court directed by the majority, each of which, if adverse to the plaintiffs, could be the subject of an appeal. The papers before us show that this case was within the futility exception, and plaintiffs should be permitted to get on with the action without further hassling over a procedural point whose outcome is foreordained.
 
 
 25
 The complaint here, originally unverified, had to be prepared in haste in order to effect service on defendant Meyers, who was served on February 3, 1982, while temporarily in New York. It was superseded within the month by a verified amended complaint which cured the lack of verification, changed some dates and added a few allegations. The majority characterize this as the complaint and I shall do likewise.
 
 
 26
 The complaint set forth ten causes of action. It alleged that in April 1981 Meyers "instructed the other members of M.S.I.'s Board of Directors to vote to issue all of the remaining authorized common shares of M.S.I., 2,950 of which are Class A Voting common and 670 of which are Class B Non-Voting common"; that on April 26, 1981, defendants Meyers, DeLuca, Thomas, and Kelly voted to authorize the acceptance of subscriptions at $1 per share; that one of the subscriptions was by Meyers for 2,020 shares of the voting common; that the book value of MSI stock was approximately $11 per share and that its market value, determined by a capitalization of projected earnings, was approximately $30 per share; that Meyers failed to disclose that his purpose was to dilute the value of the shares of other stockholders by allowing him to increase his holdings at a price substantially below both book and market value; that in September or October 1981 Meyers caused MSI to pay him a 3% commission on its total revenues for the fiscal year ended June 30, 1981, to which the other directors voiced no objection; that in August or September 1981 Meyers caused MSI to use corporate funds to acquire a vacation condominium in Maryland for Meyers' personal interest and that the other directors voiced no objection to this; that in 1978, 1979 and 1980 MSI paid Meyers for expenses not incurred; that from the formation of MSI in 1978 through 1980 Meyers authorized and caused MSI to issue checks which were not for its corporate purposes but for his personal interest; and that he caused the books and records of MSI to be kept at his personal residence in violation of New York Business Corporation Law Sec. 624. When the allegations with respect to futility quoted or referred to in the majority opinion are read in the light of these other allegations, I am not so sure as my brothers that they are insufficient.
 
 
 27
 However, it is unnecessary to debate this since the court had before it plaintiffs' motion for leave to file a further amended complaint, accompanied by affidavits, and the defendants' opposing affidavits. It could be argued that, in view of the minor nature of the first amendment, the further amended complaint was in practical effect a first amendment, which, under F.R.Civ.P. 15(a), is allowable as a matter of course at any time before a responsive pleading is filed. However, we need not consider this since defendants' counsel did not oppose the grant of leave to file the further amended complaint. J.App. at 72-73. Under the plain terms of F.R.Civ.P. 15(a) this was thus before the court, without need for any action on its part, and we should treat the case on that basis. See Fern v. United States, 213 F.2d 674, 677 (9 Cir.1954).
 
 
 28
 The further amended complaint contained several additional allegations. One was that as a result of requests made during the first nine months of 1980 by plaintiffs Kaster and Frank, then directors of MSI, to obtain a review of the corporation's books and records, Meyers, acting "as a director and dominating shareholder", removed them as directors at the November 15, 1980, stockholders' meeting and named his own set of directors without the formality of a vote. Another new paragraph alleged a meeting between Kaster, Frank and their attorney, on the one hand, and Meyers and MSI's attorney, the defendant DeLuca, on the other, at Friendship International Airport in Baltimore at which "[a]ll the relief sought in this complaint was discussed and demanded." The paragraph in the verified amended complaint concerning the issuance of the 2,020 shares of common stock to Meyers was modified to allege that Meyers failed to disclose to the outside director, Kenedy, and to the stockholders that MSI had recently been awarded a $780,000 service contract, which was approximately 2 1/2 times the previous year's revenues, and that the corporation's unaudited 1980 financial report did not reflect a three-year $3,000,000 service contract which, if properly accrued, would have established a significantly higher book value. Plaintiffs alleged, alternatively, that even if Meyers did disclose the contract to the other directors, his "total domination and control over them precluded their exercise of independent business judgment" in pricing the newly issued shares.
 
 
 29
 The district court also had before it the affidavit of Charles G. Kaster, submitted by plaintiffs in opposition to the motion to dismiss the verified amended complaint and in support of their cross-motion for leave to file the further amended complaint.[1] This amplified the allegation in the further amended complaint concerning the November 15, 1980, stockholders' meeting as set out in the margin.[2] Kaster also alleged, "There can be no doubt that Meyers, either single-handedly or with the imprimatur of his other hand-picked directors (the 'Meyers group'), determines all MSI policy", and that since the November 15, 1980, stockholders' meeting there had been only one directors' meeting, held on April 26, 1981, in Gatlinburg, Tennessee, the locus of a nuclear industry convention during which MSI was awarded the $780,000 service contract mentioned above. The affidavit continued:
 
 
 30
 Meyers also said that since he owned a majority of the voting stock, he could do whatever he wanted. He said that if the other directors did not agree with him, he would vote in new directors. These statements have been repeated to me, by Meyers, on numerous prior and subsequent occasions. Meyers has told me that MSI is "his company" and he can do with it as he pleases.
 
 
 31
 Another paragraph amplified on the December 21, 1981, meeting at the Baltimore airport.
 
 
 32
 Also pertinent was an affidavit of the single independent director, Kenedy, offered by counsel for the defendants, likewise filed a year before the decision of the district court. This stated, inter alia, that he had received no agenda for the April 26, 1981, directors' meeting at Gatlinburg, which he was unable to attend; that he did not receive a copy of the minutes until June; that the minutes contained a resolution establishing a committee including himself to form an employee and executive compensation plan; that he called defendant DeLuca to arrange a luncheon to discuss such a plan as well as other financial matters; that DeLuca did not appear, called later to apologize, said he would reschedule the meeting, but never did so; and that between the April 26, 1981, board meeting and February 5, 1982, when Kenedy resigned, writing to MSI that he "had no desire to serve on a Board which apparently had no function", there had been no meetings and Kenedy had received no correspondence from the company. He had no knowledge of the purchase of the condominium and the commission arrangements for Meyers alleged in the complaint, and knew nothing of the stock purchases except as revealed in the minutes of the April 26, 1981, board meeting, which he received in June.
 
 
 33
 I have no quarrel with the decision in Elfenbein v. Gulf & Western Industries, Inc., 590 F.2d 445 (2 Cir.1978) (per curiam), that the futility allegations in the complaint there at issue were insufficient. Gulf & Western and later Stelux owned only 27% of Bulova's stock and had only two nominees on its eleven-member board. Lewis v. Graves, 701 F.2d 245 (2 Cir.1983), also involved a publicly held company. So far as concerned the Stock Plans claims, six of the eleven directors were disinterested. With respect to the Babcock stock acquisition and merger, the court found itself unable to understand how McDermott's acquisition of another company was so important to the directors' preservation of their positions as to render demand on them futile; the case might have gone otherwise if the claims had concerned opposition to a hostile tender offer for McDermott. Plaintiffs' allegations here bear no resemblance to those held insufficient in those cases. MSI was a closely held corporation, which, on plaintiffs' allegations, was completely dominated by Meyers, who controlled almost 72% of its voting stock before and over 70% after the transaction here challenged, added and subtracted directors without the slightest compliance with corporate procedures, dispensed with directors' meetings, made no effort to inform directors of what was going on, and regarded himself as the corporation. We said in Brody v. Chemical Bank, 517 F.2d 932, 934 (2 Cir.1975), that
 
 
 34
 [t]he very purpose of the "demand" rule is to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs. In re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 88 L.Ed.2d 107 (1973).[3]
 
 
 35
 The "normal status" of MSI's directors, as sufficiently alleged in the further amended complaint, not to speak of the affidavits, was to serve not as "conductors of the corporation's affairs" but as rubberstamps for Meyers. The Third Circuit has said that "the court, in determining whether demand is necessary, should consider whether a demand on the directors would be likely to prod them to correct a wrong." Lewis v. Curtis, 671 F.2d 779, 786, cert. denied, --- U.S. ----, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Even if one could conjure up the possibility that one of MSI's directors chosen by Meyers would have had the moral stamina to challenge action which had been taken at Meyers' behest or which Meyers had taken without their approval, an effort requiring an imagination stronger than mine, the plaintiffs' allegations negate any likelihood of the challenge's success. This too is an essential ingredient of the necessity for a demand. Action is futile if it is "incapable of producing any result". Random House Dictionary of the English Language 576 (1966). If ever there were a case for applying the futility exception recognized in Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2 Cir.1955), for cases "where the directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked", this is it. As was said long ago in Young v. Alhambra Mining Co., 71 Fed. 810, 812 (C.C.N.D.Ill.1895), quoted with approval in 3B Moore, Federal Practice p 23.1.19 at 23.1-89 (1982): "Every sensible man, out of a court of justice, knows (that a demand under the circumstances) would never be complied with."
 
 
 36
 It may be, of course, that plaintiffs' allegations with respect to Meyers' domination of the MSI board are unfounded, although defendants do not suggest that they are and Kenedy's affidavit, introduced by them, makes this unlikely. However, any such possibility would not justify dismissal under F.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted.[4] This case has been pending for more than two years; it is time to get on with it. I would reverse with instructions to reinstate the further amended complaint.
 
 
 
 [1]
 Brian P. Kenedy represented the minority shareholders and resigned after the present action was filed. His motion to dismiss the action against him was unopposed and was granted on February 28, 1983
 
 
 [2]
 "[U]nder [Rule 41(b) ] an order of a district court which dismisses a complaint for failure to state a claim, but which does not specify that the dismissal is without prejudice, is res judicata as to the then existing claim which it appears plaintiff was attempting to state." Rinehart v. Locke, 454 F.2d 313, 315 (7th Cir.1971); see Fed.R.Civ.P. 41(b). The district court's dismissal of appellants' complaint, without leave to amend, would represent a bar to further action by appellants in both federal and state courts on the claims included in the dismissed complaint. An alternative action under New York or Maryland Blue Sky laws may also be barred. It is questionable whether New York law would permit in personam jurisdiction over all of the individual appellees, some of whom are not New York residents and have virtually no contacts with the state. See N.Y.Civ.Prac. Law Sec. 302 (McKinney 1972 & Supp.1982)
 
 
 [3]
 The Supreme Court cases cited by appellant, Delaware & Hudson Co. v. Albany & Susquehanna Railroad Co., 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862 (1909), and Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905), are not persuasive authority that ownership of a majority of shares presumptively makes a demand futile. Both cases involve the application of Equity Rule 94, which stated that the complaint must "set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action." Delaware & Hudson, 213 U.S. at 445, 29 S.Ct. at 542 (emphasis in original)
 The futility exception to the demand requirement of Rule 94 does not appear in the Rule, but was created by Doctor and Delaware & Hudson. In both cases, the Court determined that the facts of the case justified an exception to the Rule. Because the Rule was not being applied, there was no requirement that the plaintiff plead "with particularity" reasons for not making an effort to seek corporate action. See id. at 446-47, 29 S.Ct. at 542-43.
 Rule 23.1, in contrast, requires that the plaintiff plead "with particularity ... the reasons ... for not making the effort" to seek corporate action.
 
 
 [4]
 We do not believe that the directors' failure to act during the pendency of the instant suit necessarily indicates their hostility to intra-corporate remedies. Business reasons or legal strategy might caution directors not to take remedial action after a suit is brought. But see Goldberg v. Meridor, 81 F.R.D. 105, 109-10 (S.D.N.Y.1979)
 
 
 [1]
 Although it has been said that the "normal procedure" in considering a motion to dismiss for failure to comply with F.R.Civ.P. 23.1 "is to look solely to the allegations of the complaint", see, e.g., DePinto v. Provident Security Life Ins. Co., 323 F.2d 826, 830 (9 Cir.1963), cert. denied, 376 U.S. 950, 84 S.Ct. 969, 11 L.Ed.2d 970 (1964), that very case sanctioned reliance on evidence taken by the district court to support a showing of futility. In a case like this, where inspection of an affidavit, filed over a year before the decision of the motion, would have imposed no inconvenience or delay, the district court should have considered this before ordering dismissal since, at the very least, the affidavit shows what could be alleged in a still further amendment
 
 
 [2]
 Soon after my review of the books, Meyers told Frank and me that he was exercising his control over MSI to replace us as directors. At the shareholders' meeting held November 15, 1980, Meyers announced that thereafter, MSI would have five directors and that he would "name" Batiste DeLuca, Frank L. Kelly, E.L. Thomas and himself to the board. Significantly, no formal vote was taken--Meyers just announced the result. In an attempt at what I believe to be appeasement of the shareholders other than Meyers, Meyers said that he would abstain from voting to elect the fifth director, allowing the other shareholders--who constituted in the aggregate a minority of all voting shares--to choose Brian P. Kenedy to be a member of the board of directors
 
 
 [3]
 In the Kauffman case Judge Aldrich, after noting that "in each instance the self-interested, affiliated directors-defendants constitute less than a majority of the board", went on to say, "Were there a majority, this is a particularity from which a conclusion of control might follow." 479 F.2d at 264
 
 
 [4]
 In Daily Income Fund, Inc. v. Fox, --- U.S. ----, ---- n. 8, 104 S.Ct. 831, 837 n. 8, 78 L.Ed.2d 645 (1984), the Supreme Court left open the question whether Rule 23.1 "itself, as a matter of federal procedure, makes demand on directors the predicate to a proper derivative suit in federal courts or whether any such obligation must instead be found in applicable substantive law."