**In re E.F. HUTTON BANKING PRACTICES LITIGATION.**

This Document Relates to: 85 Civ. 3745 (Strougo, et al.), 85 Civ. 6800 (Johnson).

MDL No. 649 (WK).

Nos. 85 Civ. 3745, 85 Civ. 6800.

United States District Court, S.D. New York.

May 2, 1986.

Sherrie R. Savett, Robert P. Frutkin, Susan Schneider Thomas, Berger & Montague, P.C., Philadelphia, Pa., Jules Brody, Stull, Stull & Brody, New York City, for plaintiffs.

I. Walton Bader, Bader & Bader, White Plains, N.Y., for plaintiff Johnson.

Raymond L. Falls, Jr., John R. Vaughan, Patricia Farren, Cahill, Gordon & Reindel, New York City, for defendants E.F. Hutton Group, Inc.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Defendants, officers and directors of E.F. Hutton move, pursuant to Fed.R. Civ.P. 23.1, to dismiss the amended consolidated derivative complaint in *Strougo* for failure to make a demand on the Board of Directors and to dismiss the complaint in *Johnson* for insufficiency of the demand. Plaintiffs argue that the demand requirement in both cases should be excused because making such a demand would have been futile. In the alternative they argue that the *Johnson* demand was sufficient. For the reasons that follow, the motion is granted and the complaints are dismissed without prejudice to re-pleading under specified conditions.

## FACTS

On May 2, 1985, in the United States District Court for the Middle District of Pennsylvania, E.F. Hutton pled guilty to all counts of an Information charging 2,000 incidents of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 (1982). On the same day Hutton consented, in a parallel civil action under 18 U.S.C. § 1345 (1982), to a civil injunction barring it from engaging in the practices which had given rise to its plea of guilty. Hutton paid a $2 million fine and established an $8,750,000 fund to pay for related costs, including the $750,000 the government had spent on its investigation of Hutton, and to secure its agreement to pay restitution to any banks that had been damaged by the illegal acts.

The practice in question was Hutton's policy of excessive overdrafting from banks at which Hutton maintained accounts during the period between July 1, 1980 and February 28, 1982. In the course of the high volume of transactions made during a given day, Hutton would withdraw more money from these banks than it had on deposit, thereby gaining the interest-free use of that money.

The first of the derivative actions was filed four days after the plea of guilty had been entered. Others followed, all of which were, on September 24, 1985, transferred to this Court for pre-trial purposes by an order of the Judicial Panel on Multidistrict Litigation. On October 29, 1985 all the derivative plaintiffs except Johnson joined in the filing of an amended consolidated derivative complaint ("the consolidated complaint"), which is the object of the instant motion to dismiss for failure to make a demand. The motion to dismiss the *Johnson* complaint is based on the claimed insufficiency of the demand made.

The consolidated complaint asserts claims on behalf of Hutton against 34 individual defendants, 22 of whom are or were directors of Hutton. As against all defendants it alleges a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1983), and a state law claim alleging breach of fiduciary duty; and as against the director defendants only, it alleges a further state law claim for breach of fiduciary duty.

Hutton currently has a 23 person Board of Directors, comprised of 18 inside and five outside directors. On May 28, 1986 its shareholders will have the opportunity to vote on a proposition to change the composition of the Board so that it will consist of nine directors, six of whom will be outside and three inside directors.

The consolidated complaint does not allege that any demand to sue had been made on the board of directors, but paragraph 25 thereof alleges the following with regard to the futility of making a demand:

(a) All members of Hutton's Board of Directors knew or should have known of the existence of the overdrafting scheme due to their receipt of monthly summaries of operation which reflected profits too high to have been legitimate.

(b) Defendant directors Rae, Lynch, and "others" at E.F. Hutton had a meeting with Hutton's outside auditors, Arthur Andersen & Co. ("Andersen"). At such meeting Andersen expressed reservations about the legality of Hutton's overdrafting policies, thereby putting these directors on notice that there might be wrongdoing under foot. On two occasions Rae refused to provide a written opinion that such practices did not present any potential legal problems.

(c) All inside directors benefited from the wrongdoing in the form of large bonuses which were tied to the overall profitability of Hutton. Defendant Director Fomon has stated that he will not return any portion of the bonuses he has received.

(d) The illegal overdrafting was a policy at Hutton. Defendant directors Fomon, Latshaw, Lynch, Witt, Doree, Epstein and Rae [1] each received or generated memoranda which indicated that overdrafting was a Hutton policy.

(e) The entire board abdicated its responsibilities to the shareholders by failing to prevent, or at least uncover and stop, the illegal scheme.

(f) All directors benefited directly from the wrongdoing by continued receipt of directors' fees, participation in stock option plans and related benefits.

(g) The existence of other litigation creates a variety of irreconcileable conflicts between the directors' self-interest and their obligations to the corporation, which make it impossible for them to consider a suit against other directors and employees of Hutton. We may take judicial notice of the other 14 civil actions pending before us against Hutton and many of its directors. Plaintiffs also allege the possibility of

---

**1.** These seven directors are the only directors referred to by name anywhere in the complaint. .

charges being brought by the Securities and Exchange Commission ("SEC").

The criminal plea agreement was annexed as an appendix to the consolidated complaint. That agreement provided that in exchange for the plea of guilty, the government agreed not to bring criminal charges arising out of the overdrafting scheme against any Hutton employee or director. At oral argument we suggested that the very existence of such an agreement called into question the disinterest of the directors by demonstrating their willingness to tender a plea by the Corporation in exchange for their own immunity from prosecution.

The *Johnson* complaint did allege that a demand had been made on May 8, 1985 in a letter from I. Walton Bader, Esq. to the Hutton board. It demanded that within ten days "action be taken against all parties responsible for the damage done to the Hutton Organization." On June 4, 1985 defendant Director Thomas W. Rae, then General Counsel to Hutton, responded by letter and informed Bader that Hutton had commissioned Griffin Bell, Esq. to investigate the circumstances surrounding the plea and submit a report. Rae's letter suggested to Bader that his "demand" was insufficient and invited him to make available to Hutton whatever information he had, which would then be passed on to Bell. It does not appear when, if ever, Bader actually received the response from Rae, which was dated June 4. However, the Johnson complaint was filed on that very day.

## DISCUSSION

### 1. Derivative Actions Generally

In *Lewis v. Graves* (2d Cir.1983) 701 F.2d 245 the Court of Appeals provided an authoritative overview for considering allegations of demand futility by plaintiffs who pursue the "extraordinary remedy of a derivative suit." *Id.* at 247. "A derivative plaintiff must 'show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, ... and this [effort] must be made

apparent to the court.'" *Id.*, (quoting *Hawes v. Oakland* (1882) 104 U.S. 450, 460–461, 14 Otto 450, 460–461, 26 L.Ed. 827).

The Court of Appeals went on to observe that the primary purpose of the demand rule is to "give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of corporate affairs." *Id.* (quoting *Elfenbein v. Gulf & Western Industries, Inc.,* (2d Cir.1978) 590 F.2d 445, 450) (quoting *Brody v. Chemical Bank* (2d Cir.1975) 517 F.2d 932, 934). Indeed, it is "a principle basic to corporate governance that the management of the corporation be entrusted to its board of directors" *Id.* As a practical matter, the corporation itself may be in a better position to pursue alternative remedies, terminate meritless actions, or undertake litigation. *Id.* at 247–248.

Against this backdrop, the doctrine of demand futility stands as an exception to the general rule of demand. "The reasons advanced for a claim of demand futility must be pled with particularity in the complaint itself .... [and] the decision as to whether a plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case." *Id.; see also Abramowitz v. Posner,* (2d Cir.1982) 672 F.2d 1025, 1033; *Elfenbein, supra.* 590 F.2d at 450.

The instant case aptly illustrates the above described need for the demand requirement. The facts alleged in the complaint—supplemented by the public information surrounding Hutton's plea of guilty—suggest that, if the Corporation wished to pursue them, valid causes of action exist against many—if not all—of the defendants named in the complaint. However, it does not follow that a disinterested Board of Directors (even if we were to assume that it was a wholly new Board, having no involvment in the facts at issue) would conclude that the present was an

appropriate time to institute litigation against the alleged miscreants. As above noted there are presently pending in this Court some 14 suits against the Corporation itself based upon, among other things, the conduct claimed to have been approved of by the directors that plaintiffs now seek to have the Corporation sue, while the complaint alleges that the Securities and Exchange Commission is contemplating litigation which might threaten the ability of the Corporation to conduct its business. It seems obvious that the directors whom plaintiffs wish to sue would be important witnesses for the Corporation in all of this existing and threatened litigation, and that a disinterested board might well—upon the advice of counsel retained to defend the Corporation in this litigation—conclude it to be unwise to subject them to further litigation clearly calculated to undercut their veracity and general effectiveness as witnesses.[2]

2. Insufficiency of the Allegations of Demand Futility

■ The problem with the consolidated complaint is that it fails to allege with sufficient particularity that a majority of Hutton's board was so self-interested or biased as to have been unable to exercise proper business judgment if a demand had been made.

The requirements of a demand and the doctrine of demand futility emanate from Fed.R.Civ.P. 23.1 which states, in relevant part:

The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

Delaware Chancery Rule 23.1 is very similar. It provides in pertinent part:

In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation ... [t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

The parties agree that resolution of this motion is not effected by any differences between federal law and the law of Delaware, the state of Hutton's incorporation. We concur. Although the federal cases and the Delaware cases sometimes use different language in articulating the relevant legal standard, we believe that Delaware and federal law are substantially similar on the demand question.

■ Under the law of this Circuit, "absent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile." *Lewis v. Graves, supra* 701 F.2d 245, 248. Merely naming all members of the board of directors will not excuse demand. "The single fact that the plaintiff named as defendants more than a majority—in this case all—of McDermott's then serving directors in our view falls short of excusing demand." *Id.* at 249; *See also Aronson v. Lewis* (Del.Supr.1984) 473 A.2d 805. According to the Court of Appeals in *Lewis, supra* at 249, absent "particularized allegations of bias or self-interest on the part of a majority of McDermott's board, the district court was clearly within its discretion in holding that demand was not futile ..."

---

**2.** At oral argument on this motion plaintiffs' attorney said "These directors don't want an adversarial proceeding, your Honor, to expose what they did." (Transcript at p. 35) It is equally possible that the Corporation does not want an adversarial proceeding at this point, for the very same reason. There are a wide variety of devices available to the Corporation which would preserve its rights against these directors without presently subjecting them and it to the hazards of litigation. For example, they could be induced to waive statute of limitations defenses until the other lawsuits had been disposed of, and similar arrangements could be made with their insurance carriers.

In *Pogostin v. Rice,* (Del.Supr.1984) 480 A.2d 619 and *Aronson v. Lewis* (Del.Supr. 1984) 473 A.2d 805 the Delaware Supreme Court set forth its views as to the demand futility requirement. A demand is futile only where, "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgement." *Aronson,* 473 A.2d at 814. This inquiry permits a court to determine whether any action by the board in response to a demand would be tainted by the self-interest of the directors. Any board action requires a majority. Accordingly, allegations of futility require particularized allegations that a majority of the board would be so tainted. *See e.g. Bergstein v. Texas International Company,* (Del.Ch.1982) 453 A.2d 467 (because a majority of the board of directors was self-interested for demand purposes, demand held futile.)

■ Plaintiffs have made particularized allegations with respect to only seven of the director defendants. Even assuming that a conflict of interest sufficient to excuse demand has been alleged as to each of them, they do not constitute a majority of the board. No particularized allegations have been made with respect to any other director. Absent particularized allegations with respect to a majority of the board, we can not find that a demand on this board would have been futile.

■ The other allegations of futility entirely lack the requisite particularity to implicate a majority of the board. Receipt of director's fees does not suggest a conflict of interest. If it did, every director who receives a director's fee would biased. Such a rule would eviscerate the rationale for *ever* making a demand and would strip Rule 23.1 of all meaning. We refuse to assume that all directors who receive such fees have a conflict of interest. *See Elfenbein v. Gulf & Western Industries, Inc.,* (2d Cir.1978) 590 F.2d 445, 451. Similarly, receipt of monthly balance sheets does not suggest that the directors were aware of

any wrongdoing or that they deliberately looked the other way. Nonetheless, even if we assume that the board had formally ratified the challenged conduct, as they had in *Lewis v. Graves,* "[t]he fact that a Corporation's directors have previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligation to the corporation, will refuse to take up the suit." *Lewis v. Graves, supra,* 701 F.2d at 248.

■ Plaintiffs strenuously argue that the receipt of bonuses by the 18 officer/director defendants, which bonuses were tied to Hutton's profitability and hence to the overdrafting scheme, creates a reasonable doubt as to their lack of self-interest or bias. We disagree. Demand is *not* excused where the directors profit only because of the general profitability of the Corporation. The relevant distinction was aptly drawn by the Delaware Supreme Court in *Aronson v. Lewis, supra,* 473 A.2d at 812.

"[D]irectors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self dealing, *as opposed to a benefit which devolves upon the corporation or all stockholders generally."* [Emphasis supplied]

*See also Elfenbein, supra.* It follows that receipt of a bonus, the size of which is tied to the overall profitability of the Corporation, does not substantiate a claim of self-dealing absent a specific allegation that the voting of the bonuses themselves or the calculation thereof involved some form of self-dealing.

■ With respect to our suggestion at oral argument that the mere existence of the plea agreement might tend to show that making a demand would have been futile, we have since concluded that such suggestion was without basis. Absent particularized allegations to the contrary, there is nothing to foreclose the distinct possibility that counsel for the Corporation may have advised members of the board

that only a few of them were in any realistic jeopardy, and that therefore less than a majority suffered from any conflict with respect to the decision to enter the plea of guilty. Since there are no specific allegations which even suggest that a majority of the board members may have considered their own potential criminal liability, we can not infer that the board's decision to enter the plea was suspect.

■ To summarize. The law of this Circuit and of the State of Delaware is clear that an allegation of demand futility must go further than naming all the directors as defendants. *See Lewis v. Graves, supra; Pogostin v. Rice, supra; Aronson v. Lewis, supra.* It must go further than alleging passive acquiescence in the challenged conduct and potential liability on behalf of some directors. *Id; see also Reilly Mortgage Group v. Mt. Vernon Savings & Loan Association* (E.D.Va.1983) 568 F.Supp. 1067. It must contain specific allegations of self-dealing or bias on the part of a *majority* of the board.

No doubt there has been considerable wrongdoing at E.F. Hutton. No doubt plaintiffs have alleged that certain defendants probably encouraged and participated in such wrongdoing. However, they have failed to allege sufficient involvement on the part of a majority of Hutton's board to overcome "the strong policy and practical advantages favoring exhaustion of intracorporate remedies," *Lewis v. Graves*, 701 F.2d at 248.

3. The Demand in *Johnson*

■ Even if we were to construe Bader's May 8, 1985 letter to Hutton's board as a demand letter, his command that they respond within ten days and his failure to consider the board's response for a reasonable time period prior to filing suit effectively nullifies his demand. *See Allison v. General Motors Corp.* (D.Del.1985) 604 F.Supp. 1106, *aff'd* (3d Cir.1985) 782 F.2d

1026 (shareholder made a demand, board formed a special litigation committee to investigate the allegations and two and a half months later shareholder brought suit, alleging futility. Two and a half month time period held insufficient to allow the board to exercise its business judgement.) The *Johnson* demand was therefore insufficient.

### CONCLUSION

The derivative complaints are hereby dismissed without prejudice to plaintiffs making a demand on the board of directors or re-pleading their allegations of futility, provided that they do not do so until the shareholders of E.F. Hutton have had the opportunity to elect a new board of directors at the annual meeting to be held on May 28, 1986.[3]

SO ORDERED.

---

3. We are advised that a demand has recently been made by another shareholder, David Steinberg, which is currently being considered by Hutton's board. A response is expected to that demand on May 19, 1986. Nothing in this opinion relates to that event or in any way deals with Steinberg's remedies should the board decline to act on his demand.