Stephen STRUGALA, Derivatively on
Behalf of Barnes & Noble, Inc.,
Plaintiff,

v.

Leonard RIGGIO, Stephen Riggio,
George Campbell, Jr., David G. Golden, William Dillard II, Patricia L.
Higgins, Irene R. Miller, Margaret T.
Monaco, David A. Wilson, Michael J.
Del Giudice, Lawrence S. Zilavy, Defendants,

and

Barnes & Noble, Inc., a Delaware
Corporation, Nominal
Defendant.

No. 10 Civ. 9504 (LLS).

United States District Court,
S.D. New York.

Oct. 5, 2011.

Chapin Fitzgerald Sullivan & Bottini LLP, Of Counsel: Albert Y. Chanhg, Francis A. Bottini, Jr., San Diego, CA, Brian Murray, Esq., Murray, Frank, & Sailer LLP, Of Counsel: Brian P. Mussay,

Gregory B. Linkh, New York, NY, for Plaintiff.

Cravath, Swaine & Moore, Of Counsel: Kevin J. Orsini, Sandra C. Goldstein, New York, NY, for Nominal Defendant Barnes & Noble.

Bryan Cave LLP, Of Counsel: Charles E. Bachman, New York, NY, for Defendants Leonard Riggio, Stephen Riggio and Lawrence S. Zilavy

## OPINION AND ORDER

LOUIS L. STANTON, District Judge.

Plaintiff, a Barnes & Noble ("B & N") shareholder, sues current and former B & N directors, directly and derivatively on B & N's behalf, for misrepresentations in proxy statements in violation of section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breach of fiduciary duty, waste of corporate assets, and unjust enrichment under Delaware law.

Section 14(a) makes unlawful the use of the mail, instrumentalities of interstate commerce, or facilities of national security exchanges to solicit a proxy in contravention of SEC rules and regulations. *See* 15 U.S.C. § 78n(a) (2006). Under SEC Rule 14a–9, which plaintiff invokes, it is unlawful to include in a proxy statement

any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to a material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a) (2010).

All defendants move to dismiss the derivative claims, claiming that plaintiff failed adequately to plead under Fed. R.Civ.P. 23.1 valid reasons for suing without a prior demand on B & N's board to bring this suit. The defendants other than B & N move under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted under section 14(a) and Delaware law.

Plaintiff alleges that he did not make a pre-suit demand on the board because the directors' lack of independence would have rendered the demand futile.

### Legal Standard

"When reviewing a motion to dismiss, a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir.2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### Plaintiff's Claims

B & N, a Delaware corporation and the world's largest book retailer, was founded by defendant Leonard Riggio, who has been chairman of B & N's board of directors since 1986 and owns 30.6% of B & N's outstanding common stock. His brother, defendant Stephen Riggio, was B & N's CEO from February 2002 until March 2010 and has been vice chairman of B & N's board since 1997. Defendants Campbell, Dillard, Higgins, Miller, Monaco, Golden, and Wilson are present B & N directors. Defendant Del Giudice was a B & N director from 1999 until September 28, 2010. Defendant Zilavy was a B & N

director from 2006 until September 28, 2010.

The gravamen of the complaint is that a majority of B & N's board members are beholden to Leonard Riggio. Acting under Leonard Riggio's influence, the board approved two transactions which would not have been approved had a majority of the board been independent: the purchase of College Booksellers, Inc. from Leonard Riggio and his wife, and the adoption of a stockholder rights ("poison pill") plan designed to ensure that Leonard and Stephen Riggio maintain control of B & N.

The complaint alleges that defendants violated section 14(a) of the Exchange Act by issuing proxy statements without disclosing that B & N's directors were not independent, but were beholden to Leonard Riggio. Specifically, plaintiff alleges that the proxy statements should have disclosed two rulings from the Delaware Court of Chancery reflecting doubt of the board's independence. Had the proxy statements made such disclosures, shareholders might have enjoined the College Booksellers acquisition, rejected the board's preferred candidates and approved a proposed amendment to the poison pill (changing its application to those with 30% rather than 20% of the stock) at B & N's September 2010 meeting, and refused to ratify the poison pill at the November 2010 special meeting. B & N's shareholders elected the board's preferred candidates, rejected the proposed amendment, and ratified the poison pill. Plaintiff seeks to set aside the election and ratification.

## A.

"College Booksellers was founded by Leonard Riggio in 1965 and is one of the largest operators of college and university bookstores in the nation. College Booksellers was entirely owned by Leonard Riggio and his wife, Louise Riggio, until it was acquired by" B & N in September 2009 for $514 million. Compl. ¶¶ 45, 47.

A special committee of the board, consisting of Miller, Monaco, Higgins, and Dillard approved the transaction. Plaintiff alleges that Monaco should not have been a member of the committee because her "longstanding association with Merrill Lynch (now part of Bank of America) rendered her neither disinterested nor independent with respect to the transaction." *Id.* ¶ 51. Monaco had "recently served as the Chief Operating Officer of two wholly-owned subsidiaries of Merrill Lynch," which was "one of three banks committed to lending up to $1 billion to Barnes & Noble" to help fund the College Booksellers acquisition, and which "stood to make millions of dollars" from the transaction. *Id.* Plaintiff similarly alleges that Dillard, a member of two J.P. Morgan advisory boards, should not have served on the special committee because J.P. Morgan also helped finance the transaction.

The acquisition was criticized by financial experts because B & N paid "well beyond the price any independent, third-party purchaser would have paid, particularly due to recent technological innovations and trends in the college book industry." *Id.* ¶ 48. The complaint alleges that "Leonard Riggio used his influence as Barnes & Noble's controlling stockholder and Chairman to force College Booksellers onto the Company for grossly excessive consideration of cash and notes, thus shifting the risk of a challenging business from him to Barnes & Noble." *Id.* ¶ 53.

Shortly after the College Booksellers acquisition, investor Ron Burkle expressed concerns regarding B & N's governance and disclosed to B & N that his Yucaipa investment funds had increased their stake in B & N to 16.8%. Four days after that disclosure, on November 17, 2009, B & N's board adopted a poison pill, which pre-

vents B & N stockholders whose combined ownership exceeds 20% from "cooperating, reaching agreements, arrangements, or understandings in connection with a proxy contest." *See id.* ¶ 59(e). If any individual stockholder (or a combination of stockholders acting collectively) acquires 20% of B & N's common stock, his ownership is effectively reduced by allowing all other shareholders to purchase B & N shares for a substantial discount. Under a "grandfather" provision, Leonard Riggio, who owned 30% of B & N's stock prior to the pill's adoption, is permitted to maintain ownership of his shares without those consequences.

The poison pill and the College Booksellers acquisition were challenged in two separate lawsuits in the Delaware Court of Chancery. In each case, the court was asked to rule on the independence of B & N's board.

### 1.

Burkle sued to invalidate the poison pill, "claiming that the adoption of the pill, and the board's refusal to amend the pill per Burkle's specific suggestions, was a breach of the directors' fiduciary duties." *Yucaipa Am. Alliance Fund II, L.P. v. Riggio*, 1 A.3d 310, 313 (Del.Ch.2010), *aff'd*, 15 A.3d 218 (Del.2010). After a bench trial, then-Vice Chancellor Strine rejected Burkle's challenge and upheld the poison pill, holding that "the board's decision to use the pill to ensure that Yucaipa could not acquire control while bypassing negotiations with the board was reasonable because it addressed that threat while leaving Yucaipa with a fair chance to prevail in a proxy contest." *Id.*

Part of Burkle's claim was that the board that adopted the pill was beholden to Leonard Riggio. The court stated that because five of B & N's nine directors were independent, "the Barnes & Noble board is comprised of a bare majority of independent directors. But, in my view, it

also continues to have a good deal of the feel of the board of a controlled company." *Id.* at 315. The court held that each of the five members Campbell, Dillard, Higgins, Miller, and Monaco was an independent director, and that each of the four members the Riggios, Del Giudice, and Zilavy was not. Although B & N's proxy solicitation had stated that Del Giudice was independent, the court held that because Leonard Riggio had contributed money to political candidates at Del Giudice's suggestion and had invested in an investment fund Del Giudice runs, "on the limited record before me I cannot conclude that the business and political ties between Del Giudice and Riggio render Del Giudice independent of Riggio." *See id.* at 314–15.

The present complaint alleges that the statement characterizing B & N's board as having "a good deal of the feel of the board of a controlled company," and the finding that Del Giudice was not independent, should have been included in B & N's proxy statements for the September 2010 election and the November 2010 special meeting.

### 2.

■ In the other Delaware Chancery lawsuit, which is still ongoing, several B & N shareholders derivatively challenge the College Booksellers acquisition as being a breach of the directors' fiduciary duties and a waste of corporate assets. B & N and its directors moved to dismiss that complaint because the plaintiffs had not first demanded that the board bring suit to challenge that transaction, as required by Delaware law. Such a demand is excused if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent" or "(2) the challenged transaction was otherwise a product of valid business judgment." *Aronson v. Lewis*, 473 A.2d

805, 814 (Del.1984), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000).

Ruling on the motion to dismiss, Vice Chancellor Strine stated that he could not determine whether the majority of B & N's board was independent: "I don't want to make a binary determination on a limited record and call someone nonindependent." Transcript of Oral Argument at 156, *In re Barnes & Noble Stockholder Derivative Litig.,* No. 4813–VCS (Del. Ch. Oct. 21, 2010), annexed as Exhibit T to Segall Decl. He admonished, "I don't want this cited back to me that Strine held that you're necessarily not an independent director." *Id.* at 157. He nevertheless declined to hold that the College Booksellers acquisition was a product of valid business judgment, stating: "... in a very unusual situation, with a bunch of particularized facts pled, including business circumstances that bear explanation on a fuller record, that I'm not prepared to rule out the possibility that ties of personal friendship and long-standing business relationships influenced these directors to do something that strayed from what was best for the company and that they knew that." *Id.* at 157–158.

Thus, he excused demand and denied dismissal, and the challenge in Delaware to the College Booksellers acquisition is proceeding.[1]

### B.

Plaintiff contends that B & N's proxy statements contained material misstatements or omissions.

First, he alleges that the April 16, 2009 proxy statement, which stated that each of Campbell, Del Giudice, Dillard, Higgins,

Miller, and Monaco was independent, was false because those board members were in fact beholden to Leonard Riggio.

Next, plaintiff alleges that B & N's board issued a proxy statement stating that Del Giudice was withdrawing from the 2010 director election due to his "other professional and personal commitments," Compl. ¶ 77 (emphasis omitted), when in fact Del Giudice withdrew because Vice Chancellor Strine found him not to be an independent director, "directly contradicting previous statements" of Del Giudice's independence in an earlier proxy statement, *id.* ¶ 78.

Plaintiff further alleges that the election of the board's recommended candidates (Golden, Wilson, and Leonard Riggio) and the rejection of the proposal to raise the poison pill's trigger from 20% to 30% resulted in part from the board's failure to disclose in proxy statements that it was beholden to Leonard Riggio: B & N filed with the SEC four proxy statements endorsing the board's preferred candidates, and advising shareholders to vote against a slate of directors Burkle had nominated and against the poison pill amendment, which Burkle had proposed. According to the complaint, "These statements were false and misleading when made because they failed to disclose that the recommendations ... were made by a self-interested Board that was not independent at the time it made these recommendations." *Id.* ¶ 94.

Plaintiff also alleges material misstatements and omissions in proxy statements regarding the board's Special Committee and urging shareholders to ratify the poison pill, which they did on November 17,

---

1. Plaintiff also challenges the College Booksellers acquisition in this case, but derivatively and as a violation of fiduciary duty under Delaware state law, and defendants concede (as Vice Chancellor Strine ruled) that no de-mand is necessary for that. The acquisition could not be set aside under section 14(a), for it was not the subject of any proxy solicitation.

2010. Those proxy statements, which stated that an independent special committee B & N's board was "hard at work" attempting to "maximize value for all shareholders," *id.* ¶¶ 80–82, were allegedly misleading because the committee was not independent, and because "the Committee was and is not 'hard at work' seeking to maximize value for all shareholders but instead was and is seeking proposals that are tailored to Riggio's demands and his interests, not the best interests of the Company's public minority shareholders," *id.* ¶ 84.

B & N filed proxy statements with the SEC encouraging shareholders to ratify the rights plan in order to "protect the Special Committee Process," and warned that "Eliminating the Rights Plan now would circumvent the process and could deny shareholders the opportunity to receive the very premium that the Special Committee is working hard to achieve." *Id.* ¶ 83.

According to the complaint,

these statements were false and misleading when made because they failed to disclose both Leonard Riggio's true motivation for seeking adoption of the poison pill—his desire to maintain control over the Board because he faces a substantial likelihood of liability for breach of the duty of loyalty—and the underlying fact that Vice Chancellor Strine has already ruled against Riggio and his beholden Board regarding their independence (or lack thereof), thus making the threat of Riggio's personal liability even stronger.

*Id.* ¶ 106.

Plaintiff sues the individual defendants derivatively under section 14(a) of the Exchange Act for the alleged misstatements and omissions in B & N's proxy statements.[2] He also alleges a class claim for breach of fiduciary duty and derivative claims for breach of fiduciary duty and waste of corporate assets against the individual defendants, and a derivative claim for unjust enrichment against Leonard and Stephen Riggio.

### *Plaintiff's Section 14(a) Claim*

Because plaintiff brings his section 14(a) claim derivatively, he is required under Fed.R.Civ.P. 23.1(b)(3) to "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."

Under Delaware law, plaintiff's section 14(a) claim must be dismissed for failure to make a demand on the board if plaintiff has not alleged facts creating a reasonable doubt that "(1) the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson,* 473 A.2d at 814.

Plaintiff alleges that a demand that B & N bring this action would have been futile because B & N's board "cannot exercise independent objective judgment in deciding whether to bring this action," Compl. ¶ 145, and the majority of B & N's directors "cannot disinterestedly consider a demand to bring this lawsuit because of their close personal and professional ties with one another and because each faces a substantial likelihood of liability for their actions" alleged in the complaint, *id.* ¶ 146.

### A.

When the complaint was filed, B & N's directors were the Riggios, Campbell, Dil-

---

**2.** Plaintiff voluntarily dismissed his direct, class claim under section 14(a) by notice of dismissal dated February 18, 2011.

lard, Higgins, Miller, Monaco, Golden, and Wilson. That board differs from the board whose independence Vice Chancellor Strine considered in *Yucaipa* and the College Booksellers litigation: Zilavy and Del Giudice have been replaced by Golden and Wilson.

Plaintiff does not allege that Golden and Wilson are not disinterested and independent. Defendants do not challenge the allegation that the Riggios are not independent. Demand is therefore excused if plaintiff's allegations create a reasonable doubt that at least three of the remaining five directors are disinterested and independent. *See Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566–N, 2006 WL 741939, at *4 (Del.Ch. Mar. 17, 2006) ("The test of futility is whether at the time of filing the majority of directors could have impartially considered and acted upon the demand.").

### Potential Liability and the "Insured Versus Insured" Exclusion

▋ Plaintiff alleges that demand is futile as to Campbell, Miller, Monaco, Dillard, and Higgins because those defendants "all face a substantial likelihood of liability for deliberately causing the Company to publish materially false and misleading statements in its definition [sic] proxy statements, in violation of Section 14(a) of the Securities and Exchange Act of 1934." Compl. ¶ 166.

The Delaware Supreme Court, however, has stated that if a given director's approval of a challenged transaction were sufficient to create a reasonable doubt that the director could independently consider a demand to sue for that transaction, "the demand requirements of our law would be meaningless." *Aronson*, 473 A.2d at 814. The

> mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disin-

terestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.

*Id.* at 815. The allegation that defendants "face a substantial likelihood of liability" is therefore insufficient to create a reasonable doubt that they are disinterested or independent.

▋ Plaintiff further alleges that demand should be excused because defendants' directors' and officers' insurance policies contain "insured versus insured" exclusions, which state that defendants will not be indemnified in lawsuits B & N brings directly. *See* Compl. ¶ 167. Thus, he alleges, defendants will never direct B & N to bring suit in response to a demand. However, such allegations "provide no particularized facts creating a reasonable doubt that the directors are disinterested or independent," and are "but variations on the 'directors suing themselves' and 'participating in the wrongs' refrain." *Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del.Ch. Nov. 6, 1989); *see also Ferre v. McGrath*, 06 Civ. 1684(CM), 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007) ("The existence of a so-called 'insured versus insured' exclusion in EVCI's D & O Policy likewise fails to establish director interest. Indeed, this argument has been rejected repeatedly under Delaware law.").

### Campbell and Higgins

Plaintiff alleges that outside directors Campbell and Higgins are not independent because they "have received millions of dollars in compensation from the Company while serving on the Board for Riggio, and have approved a number of self-interested transactions in the last two years pushed through by Riggio for his sole personal

benefit at the expense of the Company." Compl. ¶ 74.

██ In "the demand-futile context a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons doing the controlling)." *Aronson,* 473 A.2d at 816 (internal quotation marks omitted). Plaintiff alleges no particularized facts regarding Leonard Riggio's control over Campbell and Higgins. The allegation that they approved "a number of self-interested transactions" does not create a reasonable doubt as to their independence. *See id.* ("The director's approval, alone, does not establish control").

██ The allegation regarding compensation is likewise insufficient to plead demand futility: "Receipt of director's fees does not suggest a conflict of interest. If it did, every director who receives director's fees would be biased. Such a rule would eviscerate the rationale for ever making a demand and would strip Rule 23.1 of all meaning." *In re E.F. Hutton Banking Practices Litig.,* 634 F.Supp. 265, 271 (S.D.N.Y.1986) (emphasis omitted) (applying Delaware law).

## Monaco

The complaint contains the following allegations that Monaco could not independently and disinterestedly consider a demand to sue for defendants' alleged section 14(a) violations:

163. Monaco has been a member of the Company's Board since 1995, during which time she has served continuously with Leonard Riggio, Dillard, and Miller. Over this time she has formed close professional and personal relationships with these individuals that make it impossible for her to disinterestedly consider a demand to bring suit against them. Moreover, during this time she has received millions of dollars in compensation from the Company, demonstrating a lack of independence and an inability to consider a demand to bring suit against herself.

164. Monaco is further entirely beholden to Leonard Riggio, because he handpicked her in 1995 to serve on his Board and has consistently asked her to approve his self-dealing transactions in exchange for significant compensation. As an example of Monaco's inability to act independently and in the best interest of shareholders, Monaco accepted Leonard Riggio's invitation to serve on the Special Committee for the College Booksellers acquisition, notwithstanding her obvious conflict of interest because of her association with Merill Lynch, one of the primary financiers of the transaction. This decision reflects her lack of independence from Riggio, as well as her inability to act in the best interests of the shareholders. Therefore, she cannot be considered able to disinterestedly consider a demand to bring suit on behalf of the shareholders.

As the Delaware Supreme Court stated in *Beam ex rel. Martha Stewart Ominimedia, Inc. v. Stewart,* 845 A.2d 1040, 1051 (Del.2004), "Allegations that Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence."

Nevertheless, a close personal relationship, coupled with "evidence that in the past the relationship caused the director to act non-independently vis à vis an interested director," might demonstrate that the relationship "is so close that the director's

independence may reasonably be doubted." *Id.* (emphasis omitted).

██ Plaintiff alleges that Monaco acted non-independently vis-à-vis Leonard Riggio by agreeing to serve on the special committee overseeing the College Booksellers acquisition, despite her recent service with Merill Lynch, a primary financier of the acquisition. Plaintiff alleges that in doing so, Monaco ignored an "obvious conflict of interest" because she was beholden to Riggio.

██ However, that identifies no personal interest of Monaco in the College Booksellers acquisition, and thus does not allege a conflict. "A director is interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales v. Blasband,* 634 A.2d 927, 936 (Del.1993). Monaco's recent service and "longstanding association with Merrill Lynch," Compl. ¶ 51, do not show that she was still employed by, or otherwise professionally associated with, Merrill Lynch at the time she served on the special committee. Nor is there an allegation that Monaco received any personal financial benefit from the College Booksellers acquisition.

██ The allegation that Monaco is beholden to Leonard Riggio because he "handpicked her in 1995 to serve on his board" also fails to create a reasonable doubt that Monaco is independent. As stated in *Aronson,* 473 A.2d at 816:

it is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence.

Accordingly, plaintiff has not pleaded that Monaco could not disinterestedly and independently consider a demand to bring a section 14(a) lawsuit.

Because the allegations in the complaint do not create a reasonable doubt that Campbell, Higgins, and Monaco are disinterested and independent, they do not create a reasonable doubt that the majority of the board is independent or disinterested.

**B.**

██ For demand to be excused under the second prong of *Aronson,* 473 A.2d at 814, plaintiff must allege "particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re Walt Disney Co. Derivative Litig.,* 825 A.2d 275, 286 (Del.Ch.2003).

As the complaint alleges (¶ 62), defendants' determination that certain directors were independent was made in accordance with the New York Stock Exchange listing standard

based on the fact that none of such persons have had, or currently have, any relationships with the Company or its affiliates or any executive officer of the Company or his or her affiliates, that would currently impair independence, including, without limitation, any commercial, industrial, banking, consulting, legal, accounting, charitable, or familial relationship.

██ In an effort to characterize that process as tainted by dishonesty or bad faith, plaintiff alleges that defendants "unquestionably knew" that its directors were not independent because Vice Chancellor Strine stated in *Yucaipa* that the board

"continues to have a good deal of the feel of the board of a controlled company." Compl. ¶ 75. However, that allegation is put in context by his actual holding that even as then constituted, "the Barnes & Noble board is comprised of a bare majority of independent directors." *Yucaipa*, 1 A.3d at 315. Thus, plaintiff has not created a doubt that the independence determinations were a product of valid business judgment.

Plaintiff further alleges that defendants violated section 14(a) by omitting to disclose in their proxy statements Vice Chancellor Strine's ruling in the College Booksellers litigation, Leonard Riggio's true motivation for seeking ratification of the poison pill, and Vice Chancellor Strine's refusal to find Del Giudice independent. Plaintiff argues that those allegations "give rise to an inference that Defendant [sic] acted in bad faith." Pl.'s Opp. 49, *citing Disney*, 825 A.2d at 289.

In *Disney*, the allegations were that "defendant directors consciously and intentionally disregarded their responsibilities, adopting a 'we don't care about the risks' attitude concerning a material corporate decision," 825 A.2d at 289, that "Less than one and one-half pages of fifteen pages of Old Board minutes were devoted to discussions of Ovitz's hiring as Disney's new president," *id.* at 287, that "The compensation committee met briefly in October to review the negotiations, but failed again to actually consider a draft of the agreement or to establish any guidelines to be used in the negotiations," *id.*, and "that the New Board directors refused to explore any alternatives, and refused to even attempt to evaluate the implications of the non-fault termination," *id.* at 289.

Here, plaintiff merely speculates why defendants chose to omit information. *See* Compl. ¶ 107 (disclosure would alert shareholders that court would likely find Leonard Riggio breached his duty of loyalty and expose his true reason for seeking shareholder ratification—"to keep him in power and in control of the Company's sales process and litigation strategy"); *id.* ¶ 78 (board did not want to admit "that Del Giudice was not independent and was not standing for reelection due to his close ties to Riggio").

The business judgment rule exists to protect directors from that sort of second guessing. *See In re Citigroup S'holder Derivative Litig.*, 964 A.2d 106, 122 (Del. Ch.2009) (business judgment rule "prevents judicial second guessing of the decision if the directors employed a rational process and considered all information reasonably available"); *Bader v. Blankfein*, 356 Fed.Appx. 471, 473 (2d Cir.2009) ("Where, as here, directors must use their valid business judgment to meet their obligations under section 14, the demand requirement for a derivative shareholder suit cannot be excused."). Here, there is not articulated the almost total disregard of proper corporate procedures, or of even the relevant subject-matter, alleged in *Disney*,[3] and the section 14(a) claim must be dismissed for failure to make a pre-suit demand.

### The State Law Claims

With that dismissal no federal statutory claim remains, and the complaint does not allege diversity of citizenship. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original

3. The *Disney* court commented that the facts, as alleged, "belie any assertion that the New or Old Boards exercised *any* business judgment or made *any* good faith attempt to fulfill the fiduciary duties they owed to Disney and its shareholders." *Disney*, 825 A.2d at 287 (emphasis in original).

jurisdiction." 28 U.S.C. § 1367(c)(3) (2006). That is the general practice and I follow it here, declining to exercise supplemental jurisdiction over plaintiff's state law claims, including those challenging the College Booksellers acquisition. *See Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

### *Leave to Replead*

Plaintiff requests leave to replead if any of his claims is dismissed. He has not previously amended its complaint, and defendants offer no persuasive reason why amendment would be futile. Accordingly, plaintiff is granted leave to replead by filing an amended complaint within 30 days from the date of this opinion and order.

### *Conclusion*

Defendants' motion to dismiss the complaint (Dkt. No. 10) is granted, and plaintiff's request for leave to replead is granted.

So ordered.